UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TRAFFIC NAMES, LTD., | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | ) Civil Action No. 1:14cv1607 |
| | ) |
| ZHENGHUI YIMING, | ) |
|     Defendant. | ) |

In Re: 224.com; 605.com, and 452.com

### REPORT AND RECOMMENDATION

This matter comes before the Court on plaintiff's Motion
for Default Judgment. (Dkt. 15.) After a representative for
defendants failed to respond to plaintiff's Motion or to appear
at the hearing on February 20, 2015, the undersigned took
plaintiff's Motion under advisement.[1]

### I. INTRODUCTION

On November 25, 2014, plaintiff Traffic Names, Ltd.
("Traffic Names") filed this action in rem against defendant
Zhengui Yiming and three domain names registered to him -
<224.com), <605.com>, and <452.com> (the "Subject Domain Names"
or "defendants"). Plaintiff alleges that the Subject Domain
Names were stolen from him through a phishing scheme, and that
now defendant Yiming has unlawfully taken control of the Subject
Domain Names, causing harm to plaintiff as the website traffic

---

[1] The record before the Court includes the Complaint ("Compl.") (Dkt. 1), the
Motion for Default Judgment ("Mot. Default J.") (Dkt. 15), and plaintiff's
Memorandum in Support of Motion for Default Judgment ("Mem. Supp. Mot.
Default J.") (Dkt. 16).

for the Subject Domains has decreased significantly.  Plaintiff alleges defendant engaged in unlawful cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"), along with common law torts claims.[2]  Plaintiff now seeks default judgment against the defendants in rem and an order directing that ownership of the Subject Domain Names be transferred to the plaintiff.  (Mem. Supp. Mot. Default J. 2.)[3]

### A.    Jurisdiction and Venue

This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 1338(a) because it involves a federal question arising under the ACPA, 15 U.S.C. § 1125(d).

This Court has in rem jurisdiction over the Subject Domain Names, pursuant to 15 U.S.C. § 1125(d)(2)(A), because plaintiff has alleged violations of its registered trademarks and plaintiff cannot obtain personal jurisdiction over the registrant, who appears to be located outside of the United States and does not appear to have sufficient contacts to confer jurisdiction.  (Compl. ¶ 2.)

Venue is proper in this District under 15 U.S.C. §

---

[2] Plaintiff's ACPA claim is not artfully pled.  However, the undersigned magistrate judge finds that plaintiff has adequately invoked the provisions of 15 U.S.C. § 1125(d), that all interested persons are on notice of this claim, and that § 1125(d) provides plaintiff a remedy, all as discussed herein.
[3] At this time, plaintiff requests that his remaining claims asserted in his complaint be dismissed without prejudice.  Therefore, this Report and Recommendation will only address the relief requested in Plaintiff's Second Motion for Default Judgment.

1125(d)(2)(C) because the registry for the Subject Domain Names, Verisign, Inc., is located in this District. (Compl. ¶¶ 3, 6.)

## B. Service of Process

A plaintiff filing an action under the ACPA must provide notice of the action to the owner/registrant of the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)-(B). Sufficient notice of an in rem action is established if the Court finds that the owner (1) is not able to obtain in personam jurisdiction over a person who would have been a defendant, in this case the registrant; and (2) through due diligence was not able to find a person who would have been a defendant by both (a) sending notice of the violation and intent to bring this action to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar, and (b) publishing notice of the action as the Court may direct after filing the action. 15 U.S.C. § 1125(d)(2)(A)(ii).

The undersigned concludes that plaintiff cannot obtain in personam jurisdiction over the registrants of the Subject Domain Names. Defendant Zhenghui Yiming gained possession of the Subject Domain Names sometime around July 2014. (Compl. ¶¶ 17, 22.) Defendant Yiming is a resident of China, as set forth on the WHOIS registry, and resides at an unlisted address in Beijing, China, and is therefore outside the scope of in personam jurisdiction within the United States. (Id. at ¶ 2.)

3

Plaintiff's Complaint thus satisfies the threshold requirement of Section 1125(d)(2)(A)(ii)(I).

Plaintiff has attempted to contact defendant Yiming, currently in possession of the Subject Domain Names. Plaintiff attempted to have the Subject Domain Names returned to him by written and telephonic means between August and October of 2014. (Compl. ¶ 25.) When those methods failed, plaintiff filed the Complaint, and sent an email on November 26, 2014 to defendant Yiming. (Mem. Supp. Mot. Serv. (Dkt. 7) Ex. 1.) Defendant Yiming responded, indicating that he had received the documents. (Id.)

On December 5, 2014, the Court entered an Order granting plaintiff's Motion for Service by Publication. (Dkt. 10.) On December 22, 2015, a notice of this action was published in The Washington Times. (Addison Decl. (Dkt. 11).)

Therefore, the requirements of § 1125(d)(2)(A)(ii)(II) have been satisfied, and service of process is deemed complete. 15 U.S.C. § 1125(d)(2)(B).

## C. Grounds for Entry of Default

To date, no party with an interest in the Subject Domain Names has appeared or otherwise participated in these proceedings. On December 22, 2014, The Washington Times published a notice of this action, which informed parties with an interest in the Subject Domain Names of the need to respond

4

in this case within twenty-one (21) days. (Addison Decl.) No party responded on behalf of the Subject Domain Names by January 19, 2015 so the plaintiff requested entry of default as to the Subject Domain Names. (Dkt. 12.) On January 27, 2015, the Clerk of this Court entered default against the Subject Domain Names. (Dkt. 13.) On January 28, 2015, Judge Brinkema ordered that plaintiff file a Motion for Default Judgment, which plaintiff then filed on January 29, 2015. (Dkts. 14-15.) The undersigned held a hearing on plaintiff's Motion on February 20, 2015, at which no representative for the Subject Domain Names appeared. (Dkt. 18.) Finding this matter uncontested, the undersigned took plaintiff's Motion under advisement to issue this Report and Recommendation.

## II.  FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that plaintiff has established the following facts.

Plaintiff Traffic Names is a United Kingdom, Limited Company, with a principal place of business in Reading, UK. (Compl. ¶ 1.) Defendant Yiming is a resident of China, as set forth in the WHOIS registry, and resides at an unlisted address in Beijing, China. (Id. at ¶ 2.) The Subject Domain Name <224.com> was purchased on April 14, 2007, <605.com> on March 24, 2008, and <452.com> on August 10, 2010 by plaintiff. (Id.

at ¶ 10.)  The Subject Domain Names were registered by plaintiff and operated through an eNom account.  (Id. at ¶¶ 16-17.) Plaintiff's registry of the Subject Domain Names was renewed through April 2, 2022 (for <224.com>), through March 22, 2022 (for <605.com>), and through May 7, 2020 (for <452.com>).  (Id. at ¶ 16; Ex. C (Dkt. 1-3) 5-21.)

Plaintiff has owned the Subject Domain Names for several years and uses the domain names for turning internet traffic into monetary gain through the use of click through traffic. (Compl. ¶¶ 10-11.)  Each Subject Domain Name is worth between $50,000 and $100,000.  (Id. at ¶ 12.)

On August 1, 2014, plaintiff attempted to sell <605.com> to a third-party.  (Compl. ¶ 18.)  While performing due diligence, the broker of record, 4.cn, discovered that the ownership records for the Subject Domain Names had been changed.  (Id.) Plaintiff unsuccessfully attempted to access his eNom account for the Subject Domain Names without success on August 1, 2014. (Id. at ¶ 20.)  After speaking with an eNom account manager, plaintiff learned that the Subject Domain Names had been transferred without plaintiff's authorization sometime around July 31, 2014.  (Id. at ¶¶ 21-22.)  Once the Subject Domain Names were transferred to ename.com, defendant changed the WHOIS registry for the domain names to a private email address of ccq6yo6wco@neamewhois.com.  (Id. at ¶ 23.)  Defendant has

6

changed the DNS for the Subject Domain Names, taken control of the websites, and redirected the income produced by the Subject Domain Names to himself. (Id. at ¶¶ 13, 28.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate plaintiff's claim against the standards of Federal Rule of Civil Procedure 12(b)(6).

#### A. Legal Standard

The ACPA allows the owner of a mark to file an in rem civil action against a domain name if the domain name violates the owner's trademark rights, and if the owner of the mark satisfies certain procedural provisions. 15 U.S.C. § 1125(d)(2)(A). The procedural provisions include establishing that the Court lacks in personam jurisdiction over the defendants, or that the plaintiff has been unable to locate the defendants through due diligence. Id. § 1125(d)(2)(A)(ii). In an in rem action, the remedies are limited to forfeiture, cancellation, or transfer of the Infringing Domain Name to the owner of the mark. Id. § 1125(d)(2)(D).

Thus, to be entitled to relief in rem, the owner of a mark must prove a violation of "any right of the owner of a mark registered in the Patent and Trademark Office," or of subsections 1125(a) or (c). Id. § 1125(d)(2)(A)(i). The phrase "any right of the owner of a mark" encompasses claims brought under § 1125(d)(1). Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 224, 228, 232 (4th Cir. 2002).

In order to establish an anticybersquatting violation, the owner of a protected mark must allege that the person "(i) has a bad faith intent to profit from that mark…; and (ii) registers, traffics in, or uses a domain name that—(I) in the case of a mark that is distinctive at the time of the registration of the domain name, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A); see Virtual Works, Inc. v. Volkswagen of Am., Inc., 238 F.3d 264 (4th Cir. 2001).

## 1. Plaintiff Possesses a Valid and Protectable Mark

The ACPA protects both registered marks as well as unregistered common-law marks. The undersigned finds that the plaintiff has sufficiently pled protectable rights in the marks alleged in the Complaint. Plaintiff purchased all three Subject Domain Names at least four years ago and has used the Subject Domain Names in commerce since their purchase. (Compl. ¶¶ 10-11, 14.) They have all been registered, and their ownership has been renewed through May 7, 2020 (for <452.com>), March 22, 2022

8

(for <605.com>), and April 2, 2022 (for <224.com>). (Id. at ¶ 16, Ex. C.) Plaintiff's registration of the Subject Domain Names and use of them in business since that registration establishes his common law rights in the marks. Therefore, plaintiff is entitled to enforce the provisions of § 1125(d) against any domain name that violates its rights in the protected marks.

## 2. Defendants Registered an Identical Domain Name

The undersigned finds that plaintiff's Complaint pleads facts showing that the Subject Domain Names registered by defendant Yiming are identical to the ones which plaintiff possesses common law rights in. Defendant Yiming gained access to the Subject Domain names by somehow stealing plaintiff's eNom's password and then fraudulently transferring the Subject Domain Names to defendant's name and control, before registering them with eName.com. (Compl. ¶¶ 17, 21-23.) Therefore, plaintiff has alleged sufficient facts to satisfy this requirement of the ACPA.

## 3. Defendants Have Acted with a Bad Faith Intent

Finally, the undersigned finds that plaintiff's Complaint pleads facts evidencing defendants' bad faith intent to profit from plaintiff's common law marks. Under the ACPA, bad faith intent may be evidenced by weighing nine factors. Id. §§ 1125(d)(1)(B)(i). "The factors are given to courts as a guide"

9

and need not be exhaustively considered in every case.

Lamparello v. Falwell, 420 F.3d 309, 319-20 (4th Cir. 2005). In relevant part, the factors supporting a finding of a bad faith include: a defendant's intellectual property rights in the domain name; a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark; and a defendant's registration of multiple domain names which the defendant knows are identical to marks of another which are distinctive at the time of registration. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I), (V), (VIII).

Based on these factors, the undersigned finds that the defendants have acted with a bad faith intent to profit from plaintiff's mark in violation of the ACPA. Defendants have no intellectual property rights in the Subject Domain Names. Those names were registered to plaintiff and used by Traffic Names for their business. (Compl. ¶¶ 11-12, 16.) The registrants of the Subject Domain Names have taken control of the domain names and therefore deprived Traffic Names from their ability to earn income from these click-through websites. (Id. at ¶¶ 11-12.) Furthermore, defendant Yiming gained access to the plaintiff's Subject Domain Names through theft of plaintiff's password and then fraudulently had the Domain Names transferred to his name, therefore was clearly aware that he registered domain names identical to plaintiff's distinctive mark. (Id. at ¶¶ 17, 22-

10

23.) These factors demonstrate a bad faith intent to profit from plaintiff's protected marks.

## B. Conclusion

Because the remaining procedural provisions of 15 U.S.C. § 1125(d) have been satisfied, the Court may order the forfeiture or cancellation of the Subject Domain Names or the transfer of the domain names to plaintiff. 15 U.S.C. § 1125(d)(2)(D)(i).

## IV. REQUESTED RELIEF

Plaintiff seeks an injunction under 15 U.S.C. § 1125(d) ordering that the domain name registry VeriSign, Inc. transfer ownership of the Subject Domain Names <224.com>, <605.com>, and <452.com> to plaintiff.

## V. RECOMMENDATION

For the reasons outlined above, the undersigned recommends that default judgment be entered in favor of the plaintiff with respect to the Subject Domain Names for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The undersigned further recommends that VeriSign, Inc. be required to transfer ownership of the Subject Domain Names to plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C). To that end, the undersigned recommends that the district judge enter an order containing specific language requested by plaintiff on page 2 of their Motion for Default Judgment.

11

## VI.   NOTICE

The parties are advised that exceptions to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.   Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

                                        /s/
                              Theresa Carroll Buchanan
                              United States Magistrate Judge
                         THERESA CARROLL BUCHANAN
                         UNITED STATES MAGISTRATE JUDGE

April 14, 2015
Alexandria, Virginia